IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 07-13 |
| | ) | |
| STEPHEN DRAKE, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

CONTI, District Judge.

Pending before the court is a motion for a reduction of sentence and retroactive application of crack cocaine sentencing guidelines (ECF No. 89) filed by defendant Stephen Drake ("defendant") in the above-captioned case. Defendant filed his motion pursuant to 18 U.S.C. § 3582(c)(2), which allows the court to modify a sentence already imposed when the original sentence was based upon a sentencing range that has subsequently been lowered, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). For the reasons set forth below, the court will grant the motion in part, and deny it in part. Specifically, the court will grant defendant's motion for a reduced sentence, reducing his sentence to seventy months, but the court will deny the motion to the extent defendant argues the court should sentence him to a term of imprisonment below the amended guideline range.

On January 10, 2007, a grand jury returned a four-count indictment charging defendant with: (1) possession with intent to distribute and distribution of less than fifty kilograms of marijuana, in violation of 21 U.S.C. § 841 (count one); (2) distribution and possession with intent to distribute marijuana within one thousand feet of a school, in violation of 21 U.S.C. § 860(a) (count two); (3) possession with intent to distribute and distribution of five grams or more

of a mixture and substance containing a detectable amount of crack cocaine, in violation of 21 U.S.C. § 841 (count three); and (4) distribution and possession with intent to distribute crack cocaine within one thousand feet of a school, in violation of 21 U.S.C. § 860(a) (count four). (ECF No. 1.) On July 23, 2008, defendant pled guilty to distribution of crack and to distribution of crack within one thousand feed of a school at counts three and four of the indictment. (ECF No. 59.) On April 27, 2009, the court sentenced defendant to 77 months imprisonment, reflecting a ten-month downward variance from the low end of the then-applicable United States Sentencing Guideline range of 87 to 108 months. (Gov. Supp. Resp. (ECF No. 107) at 1.)

On November 2, 2011, defendant filed the present motion following the United States Sentencing Commission's determination that Amendment 750, which lowers sentencing guidelines for crack-cocaine offenses due to the large disparity in crack-cocaine and powder cocaine sentencing, retroactively applies to imprisoned offenders.[1] Following a status conference on February 2, 2012, at which the court ordered the parties to file briefs on a number of matters, defendant raised significant constitutional objections, as explained more fully below, to the Amendment 750 sentence reduction regime. (ECF No. 93.) In a February 21, 2012 text order, the court ordered the government to file a brief in response to the constitutional arguments raised by defendant if it wished to contest those arguments. The government filed its response brief on March 13, 2012. (ECF No. 107.) Both parties now agree that seventy months of imprisonment is the low end of defendant's amended sentencing range. (ECF No. 93 at 6; ECF No. 107 at 3.) Defendant, however, requests the court reduce his sentence to 62 months, to

---

[1] The Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372 (2010), modified the statutory penalties for crack offenses by reducing the crack-to-powder cocaine sentencing ratio from 100:1 to approximately 18:1. See United States v. Dixon, 648 F.3d 195, 196-97 (3d Cir. 2011). Amendment 750, which amended the Sentencing Guidelines in accordance with the mandate of the FSA, became both effective and retroactive on November 1, 2011. See U.S.S.G. app. C, amends. 750, 759 (Supp. Nov. 1, 2011).

2

account for the 11.45% variance present in his original sentence from the then-applicable lower end of the Guidelines range. (ECF No. 93 at 6.)

The government and defendant dispute whether the Sentencing Commission Policy Statement governing § 3582(c) proceedings, U.S.S.G. § 1B1.10(b)(2), violates the separation of powers between Congress and the Judiciary. Defendant argues since the amended version of § 1B1.10(b)(2), "instructs judges to adjust portions of the original sentence other than those directly affected by its amendments," it gives the Sentencing Commission the power of both Congress and the sentencing court, in violation of the separation of powers. (ECF No. 93 at 10.) The government argues, however, that the Supreme Court, in Dillon v. United States, 130 S. Ct. 2683 (2010), held that U.S.S.G. § 1B1.10 did not violate the separation of powers and was binding on this court. (ECF No. 107 at 5.) The government asserts that defendant's argument is simply a recycling of Justice Stevens' dissent from that case. (ECF No. 107 at 5.)

In order to grant a sentence reduction, § 3582(c) first calls for the court to determine whether or not the basis of the original sentence was a sentencing range that was subsequently lowered. Dillon, 130 S. Ct. at 2691; 18 U.S.C. § 3582(c). Both parties agree this first step is met. (ECF No. 93 at 5; ECF No. 107 at 9.) Next, § 3582(c) requires the district court to determine if a reduction is consistent with the applicable policy statement of the Sentencing Commission; and if so, to determine whether a reduction is warranted, when taking into consideration the §3553(a) factors. See Dillon, 130 S. Ct. at 2691-92. In defendant's case the applicable policy statement is U.S.S.G. § 1B1.10(b)(2). Previously, § 1B1.10 allowed courts to reduce prison terms below the amended guideline range, but only if the original sentence was also below the then-applicable guideline range; the 2011 amended version, however, prohibits courts from lowering the sentence below the amended guideline range, except in one instance

3

(substantial assistance), which does not apply to this case. FEDERAL SENTENCING GUIDELINE MANUAL, Vol. 1, Highlights of the 2011 Amendments, vii-viv (2011).

While Dillon was decided before the amendment of U.S.S.G § 1B1.10, the court finds its reasoning dispositive in this case. In Dillon, the defendant's conviction of several drug-trafficking offenses eventually qualified him for a sentence reduction based upon amended Sentencing Guidelines. 130 S. Ct. at 2689. At issue in Dillon was whether the holding in United States v. Booker applied to § 3582(c) proceedings. Id. at 2690. In Booker, the Supreme Court held that the United States Sentencing Guidelines are only advisory, rather than binding, on district courts in sentencing proceedings. United States v. Booker, 543 U.S. 220, 233-34 (2005). In Dillon, the Supreme Court expressly rejected the proposition that Booker's holding, discussing sentencing proceedings, must also apply to sentence-reduction proceedings under § 3582(c). The Supreme Court "conclude[d] that proceedings under [§ 3582(c)(2)] do not implicate the interests identified in Booker." Dillon, 130 S. Ct. at 2692. The court noted that "the *statutory* differences" between sentencing and sentence-modification proceedings "are highly significant." Id. at 2693 (emphasis added).

The controlling issue in Dillon (and in this case) was the "readily distinguishable" statutory nature of § 3582(c)(2) proceedings from other sentencing proceedings. Id. The Supreme Court focused intently on § 3582(c) proceedings being not the same as sentencing proceedings. The Supreme Court noted: "§ 3582(c) does not authorize a sentencing or resentencing . . . [; rather,] it provides for the 'modif[ication of] a term of imprisonment' by giving the courts the power to 'reduce' an otherwise final sentence." Id. at 2690 (quoting 18 U.S.C. § 3582(c)(2)). Section 3582(c) proceedings are, therefore, entirely different, and separate from, a defendant's sentencing proceeding and consequently the rights associated with that

4

sentencing do not apply to any subsequent sentence-modification under § 3582(c). Id. at 2690-91. The Supreme Court noted that "sentence-modification proceedings authorized by § 3582(c)(2) are not constitutionally compelled." Id. at 2692. Thus, because imprisoned defendants have no constitutional right to retroactive application of amended Sentencing Guidelines, they do not have a constitutional right to challenge the portions of those same Guidelines which disallow lowering even further the reduced sentences. Id.

The Supreme Court addressed Justice Stevens' separation of powers argument in his dissent by pointing out that under § 994(u) Congress retained, for the Sentencing Commission, the power to determine "'in what circumstances and by what amount' the sentences of prisoners affected by Guidelines amendments 'may be reduced.'" Id. at 2693 (quoting 28 U.S.C. § 994(u)). Although the Supreme Court in Dillon did not reach the separation of powers argument because it was not preserved, the majority noted that "[n]o one disputes that the Commission's retroactivity determinations . . . are binding" and went on to point out that this recognition of the Commission's power undermines any argument that those determinations are only advisory. Dillon, 130 S. Ct. at 2693. As cited below, those courts of appeals which have squarely addressed the issue since Dillon have rejected similar separation of powers arguments.

There are no facts here which distinguish, in any substantial way, defendant's case from the case in Dillon. While U.S.S.G. § 1B1.10 was amended after the ruling in Dillon, the conclusion in Dillon is still applicable—§ 3582(c)(2) proceedings are not sentencing, or resentencing, proceedings but are an entirely different process of modifying an already final sentence. Substantive changes in the policy statement governing § 3582(c)(2) proceedings, from disallowing variances unless in the original sentence to disallowing variances unless for substantial assistance, do not change the character of the § 3582(c) proceeding. As the Court

5

noted, it was the *statutory* distinctions between sentencing proceedings and sentence-modification proceedings which were controlling, a conclusion unaffected by a subsequent revision of the Guidelines provision. Id. at 2693. The character of the § 3582(c) proceeding is an exception to the rule of finality in sentencing, which does not have any attached constitutional rights, and that character is what the Supreme Court regarded as distinguishing § 3582(c) proceedings from the sentencing proceedings considered in Booker.

The Court of Appeals for the Third Circuit, in an unpublished decision, recently denied an argument that Congress violated the nondelegation doctrine by giving the Sentencing Commission power to restrict the federal courts. United States v. Smith, 459 F. App'x 99, 101 n.3 (3d Cir. 2012). The defendant in Smith was challenging the prior version of U.S.S.G. § 1B1.10. Although that decision specifically addressed the nondelegation doctrine, the court considered the separation of powers issue also, noting that "[t]he Courts of Appeals for the Ninth and Tenth Circuits have also concluded that U.S.S.G. § 1B1.10 does not violate the separation of powers." Smith, 459 F. App'x at 101 (citing United States v. Fox, 631 F.3d 1128, 1133 (9th Cir. 2011) ("Fox erroneously charges that Policy Statement 1B1.10 'determines the sentence to be imposed in a criminal case.' It does not. Policy Statement 1B1.10 does not even apply until a sentence has already been imposed, at which point it merely limits the scope of sentence reduction proceedings."); United States v. Dryden, 563 F.3d 1168, 1170 (10th Cir. 2009) (denying defendant's argument that § 1B1.10 is "merely advisory")); see United States v. Garcia, 655 F.3d 426, 435 (5th Cir. 2011) (concluding there was no separation of powers problem with the prior version of U.S.S.G. § 1B1.10(b)(2), which allowed courts to reduce prison terms below the amended guideline range, but only if the original sentence was also below the then-applicable guideline range).

As an alternative to his separation of powers argument, defendant argues that Amendment 750 is in conflict with the Sentencing Commission's statutory authority and therefore not binding. (ECF No. 93 at 14.) Defendant admits the Sentencing Commission has the statutory authority, in the context of sentence reductions, to determine "whether and to what extent the amendment may be applied retroactively to defendants who have already been sentenced." (Id. at 14-15 (citing Dillon, 130 S. Ct. at 2688).) Defendant acknowledges that the statute which permits the court to lower defendant's sentence, 18 U.S.C. § 3582(c)(2), conditions the court's authority upon the authorization of the Sentencing Commission; a sentence reduction is permitted "'*if* such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" (ECF No. 93 at 15 (emphasis added) (quoting 18 U.S.C. § 3582(c)(2)).) Notwithstanding these concessions, defendant argues the Sentencing Commission exceeded its authority by enacting a sentencing reduction regime in which courts do not have the authority to vary outside retroactive amended sentencing ranges.

Defendant's logic is that if (a) the Commission does not have the authority independently to alter or modify the substance of the original sentence (which is admittedly true), then (b) the prohibition on variances in § 3582(c)(2) proceedings is impermissible, because (c) it effectively overrides the sentencing court's original decision to grant a variance. Because the court finds no basis for this argument in the statutory language, defendant's secondary argument that he is entitled to a variance from his amended sentencing range also fails. Defendant did not articulate in what way Amendment 759 (which makes Amendment 750 retroactive) falls outside the realm of the Commission's admittedly valid authority to determine whether and to what extent its amendments to the Sentencing Guidelines should be retroactively applicable. See United States v. LaBonte, 520 U.S. 751, 752 (1997) (holding that the Sentencing Commission's discretion in

promulgating the Guidelines is limited in situations where the Guidelines are in conflict with "*specific* directives of Congress" (emphasis added)). Defendant can point to no specific congressional directive which is violated by Amendment 750. His argument, as outlined above, turns on the effect of Amendment 750 vis-à-vis the court's original sentencing decision. His argument could only succeed if he could point to a "specific directive[] of Congress" which forbade the Commission, in its valid role of deciding whether and to what extent its amendments should be retroactive, from limiting the court's discretion to consider with respect to a § 3582(c)(2) proceeding the considerations relevant at the original sentencing, and thereby constructively affecting the court's sentencing decisions. No such statute exists. In fact, the grant of authority to the Sentencing Commission to determine whether and when amendments should be retroactively applied will inevitably override the court's discretion in some instances.[2]

Defendant failed to distinguish the Supreme Court's decision in Dillon, which unequivocally distinguished sentence reduction proceedings from sentencing proceedings. Dillon, 130 S. Ct. at 2693 ("[S]entence-modification proceedings authorized by § 3582(c)(2) are readily distinguishable from other sentencing proceedings."). Dillon makes clear that a sentence reduction proceeding pursuant to § 3582(c)(2) is not the conceptual continuation of the original sentencing—a viewpoint implicit in defendant's argument; rather, such motions give rise to distinct, subsequent proceedings, which are carried out only after a final judgment has already been entered. Id. at 2691 ("Section 3582(c)(2)'s text together with its narrow scope, shows that

---

[2] See Fox, 631 F.3d at 1132 ("Because Policy Statements, among other functions, interpret Guidelines, it is not surprising that they will, at times, *affect the length of sentences*. In fact, the Supreme Court has expressly held that Policy Statements may authoritatively determine the application of a particular Guideline, even where it affects the length of the defendant's sentence." (emphasis added) (citing Williams v. United States, 503 U.S. 193, 201 (1992), "Where, as here, a Policy Statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable Guideline. An error in interpreting such a Policy Statement could lead to an incorrect determination that a departure was appropriate.")).

8

Congress intended to authorize only a *limited adjustment to an otherwise final sentence*." (emphasis added)); see Fox, 631 F.3d at 1132-33 (disregarding an argument that "Policy Statement 1B1.10 'determines the sentence to be imposed in a criminal case'" and noting that it is not applicable until after a sentence has already been imposed).

Section 3582 proceedings are less akin to the original sentencing and more like a congressional act of systemic leniency.[3] Congress delegated authority to the Sentencing Commission to create the rules to be followed by courts when retroactively applying the amended guideline range. There is no historical or constitutional role for the Judiciary to grant leniency to prisoners based upon *system-wide*, post-sentencing, policy-driven sentence reductions[4]; Congressional action in such an area does not, therefore, violate the constitutional grant of "judicial Power" to the federal courts.[5] U.S. CONST. art. III,§ 1. As the Court of

---

[3] Dillon, 130 S. Ct. at 2686 ("The section [3582(c)] represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.").

[4] The "judicial Power" is expressly limited to "Cases" and "Controversies" and does not extend to the issuance of advisory opinions or the resolution of nonjusticiable disputes. United States v. Mistretta, 488 U.S. 361, 412 (1989) ("These doctrines help to ensure the independence of the Judicial Branch by precluding debilitating entanglements between the Judiciary and the two political Branches, and prevent the Judiciary from encroaching into areas reserved for the other Branches by extending judicial power to matters beyond those disputes 'traditionally thought to be capable of resolution through the judicial process.'").

[5] "The principal function of the separation-of-powers . . . is to maintain the tripartite structure of the Federal Government—and thereby protect individual liberty—by providing a 'safeguard against the encroachment or aggrandizement of one branch at the expense of the other.'" Clinton v. City of New York, 524 U.S. 417, 482 (1998) (Breyer, J. dissenting) (quoting Buckley v. Valeo, 424 U.S. 1, 122 (1976) (per curiam)). As such, congress may not, strictly speaking, give away Article III "judicial Power" to non-Article III decisionmakers. N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982). The Supreme Court has long recognized that "Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" Stern v. Marshall, 131 S. Ct. 2594, 2609 (2011) (quoting Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272 (1856). Notwithstanding this general prohibition, Congress may in certain situations assign adjudicatory functions to non-Article III bodies. See, e.g., Palmore v. United States, 411 U.S. 389, 407-408 (1973) ("[T]he requirements of Art. III, which are applicable where law of national applicability and affairs of national concern are at stake, must in proper circumstances give way to accommodate plenary grants of power to Congress to legislate with respect to specialized areas having particularized needs and warranting distinctive treatment."). Congressional delegations of adjudicative functions to non-Article III entities are assessed with

Appeals for the Ninth Circuit noted, any separation of powers attack upon "Policy Statements like 1B1.10 . . . conflicts with Supreme Court precedent, which has upheld the [Sentencing Reform Act's] broad delegation of legislative power to the Sentencing Commission against a separation of powers challenge." Fox, 631 F.3d at 1133 (citing United States v. Mistretta, 488 U.S. 361, 412 (1989)).

Although the court ordered the parties to file briefing about whether defendant has the constitutional right to attend his modification hearing, the court need not consider the issue in this opinion because defendant waived any right he may have to attend a hearing. (ECF No. 93 at 46-47.)

Both parties agree that the 18 U.S.C. § 3553(a) factors must be considered prior to any sentence reduction. (ECF No. 93 at 48-49; ECF No. 107 at 43.) Upon consideration of the 18 U.S.C. § 3553(a) factors, as reflected in the original sentencing hearing, and pursuant to 18 U.S.C. § 3582(c)(2), governed by Policy Statement U.S.S.G. § 1B1.10(b)(2), defendant's sentence is reduced to seventy months, which is within the amended guideline range. The court must abide by the policy statement issued by the Sentencing Commission, which does not permit the court to vary from the amended guideline range, except in situations involving substantial assistance. An amended judgment will follow this memorandum opinion and order.

---

"practical attention to substance," rather than "conclusory reference to the language of Article III." Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 847-48 (1986). In any event, having concluded that no adjudicative functions are implicated in the granting of systemic leniency to prisoners already sentenced, the court need not determine whether the grant of such authority violates the separation of powers by depriving the Judiciary of its constitutional imperative, as is suggested by defendant.

***ORDER***

AND NOW, this 21st day of June, 2012, for the reasons set forth above, it is HEREBY ORDERED that defendant Stephen Drake's motion for retroactive application of sentencing guidelines (ECF No. 89) is GRANTED IN PART, to the extent it seeks a sentence reduction to seventy months, which is the bottom of the amended guideline range, and DENIED IN PART, to the extent it seeks any variance below the bottom end of the amended range.

By the court,

 /s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge